**GREAT NORTHERN CO–OP. ASS'N v.
BOWLES, Price Adm'r.**

No. 156.

United States Emergency Court of Appeals.
Heard at Madison, Wis., Dec. 1, 1944.

Decided Dec. 29, 1944.

G. Burgess Ela, of Madison, Wis. (Emerson Ela and Ela, Christianson & Ela, all of Madison, Wis., on the brief), for Complainant.

John O. Honnold, Jr., Atty., of Washington, D. C. (Richard H. Field, Gen. Counsel, Nathaniel L. Nathanson, Associate Gen. Counsel, and Betty L. Brown, Atty., all of the Office of Price Administration, all of Washington, D. C., on the brief), for respondent.

Before MARIS, Chief Judge, and LINDLEY and LAWS, Judges.

LINDLEY, Judge.

We are confronted here with the question of validity of Amendment No. 2 (9 F.R.1661) of Maximum Price Regulation 494 (8 F.R. 15663), fixing ceiling prices for tobacco on sales by growers, grower co-operatives and middlemen. Complainant filed a protest and, this having been denied, brought this proceeding.

In late 1943 certain growers of tobacco in Northern Wisconsin, being members of the Northern Wisconsin Tobacco Pool, hereinafter spoken of as The Pool, delivered their crop for that year to The Pool. Organized under the statutes of Wisconsin as a grower co-operative, it receives tobacco grown by its members, sells it and distributes the proceeds pro rata amongst the members in accord with the respective quantities delivered.

At that time, under Regulation 494, the price of the grower was fixed at 30 cents per pound for the class of tobacco with which we are concerned and the price at which a co-operative might sell at 31 cents per pound. Supplemental Order No. 84 (9 F.R. 1721), then in existence, provided that co-operatives under certain circumstances might distribute patronage dividends to their members in excess of maximum ceiling prices. Speaking specifically, if the grower price was 30 cents and the co-operative sold at 31 cents, the payment of patronage dividends from the net sums realized from sales at 31 cents was no violation of the ceiling price. Thus, at that time, The Pool, when it received the growers' tobacco, was permitted to dispose of it at not to exceed 31 cents and to deliver to its members this realized price even though it resulted in a return to the growers over and above their ceiling. Neither The Pool nor its members made any complaint as to the adequacy of the selling price of 31 cents. However, inasmuch as a purchaser from The Pool could resell at an increased price, the latter conceived the idea of creating a second co-operative and having it, as a dealer co-operative, resell at an increased price, believing that under the supplemental order this excess over and above 31 cents could be distributed to its members as patronage dividends. Accordingly, on January 18, 1944, complainant was organized, as a dealer co-operative. On the day following, The Pool, the original co-operative, became the only member of the new one. Immediately, complainant's directors authorized the purchase of the 1943 tobacco crop held by The Pool at 31 cents, and between February 2 and February 10, complainant contracted to resell the same tobacco to various purchasers at 36 cents a pound. The Administrator, reciting in his considerations that certain sellers of tobacco had evinced a purpose to resell tobacco in substantially the same form in which it had been purchased at higher prices than the maximum price established for sales by grower co-operatives without performing any packing, delivery or other legitimate or useful middleman functions, promulgated Amendment No. 2 of which complaint is made. That Amendment fixes the maximum price of tobacco on resale in substantially the same form as when purchased from growers or grower co-operatives at the maximum price for sales by grower co-operatives. It is the validity of this Amendment when applied to the particular facts here involved with which we are concerned.

Complainant's counsel frankly admit that the only purpose for complainant's creation and existence was to secure for the growers of tobacco greater patronage dividends than was permissible or than could have been realized from the ceiling price of 31 cents fixed for grower co-operatives. They apparently believed there was a legitimate loophole in the then existing Regulation by virtue of which they might capture for the growers something in addition to their then possible patronage dividends. This, they seemed to think, was justified by the language of Supplemental Order No. 84. Obviously, complainant had no excuse for existence for any other purpose. It performed no useful function in the tobacco

trade industry. It received the tobacco from the original co-operative and immediately sold it in the same form without treating it and without performing any service upon or with regard to it. Equally as obviously, complainant became the alter ego of The Pool and, in turn, of its grower members, and, as such, now insists that the Regulation having contained this loophole, the attempt of the Administrator to eliminate it and thus prevent evasion and circumvention of the ceiling price was illegal.

To this we can not assent. Indeed, we think The Pool and its members too easily permitted themselves to be persuaded that Supplemental Order No. 84 contemplated any such course of action. That order attempted in no way to fix prices. It merely provided that, though a grower ceiling was fixed at a certain sum and that of its co-operative at more, the patronage dividends received from the Co-operative by the growers in excess of the grower's ceiling should not constitute violation of price ceilings by the growers. Surely this order did not contemplate that growers could receive further returns in the form of patronage dividends legitimately if the Co-operative violated the ceiling price of 31 cents and resold at a higher price. Indeed, the Regulation expressly forbade a resale by the Co-operative at such an increased price; it could not legitimately make such sales. That was the inspiring cause of the creation of complainant. To say that complainant, with The Pool its only member, could be created and operate solely as a useless co-operative upon top of another for the sole purpose of doing what the original co-operative could not do is fallacy to the nth degree. The Pool can not sell tobacco in the same form at more than 31 cents; it can not take the name of complainant and do so. The Administrator was amply justified in promulgation of the Amendment.

Whether there exist other dealers whom this Regulation might injuriously affect; whether such possible interested parties might find just cause for complaint of arbitrary action or unreasonable discrimination; whether, as to the tobacco trade in general, the Regulation is unfair and unreasonable, and all similar inquiries are questions which, we think, in view of the present record it is not within our province now to decide. The impelling facts are that complainant is merely the initial co-operative and its grower members under another name; that no growers or co-operatives of growers other than Northern Wisconsin are members of complainant co-operative and that in the overall economic structure of the tobacco marketing industry, complainant serves no useful purpose other than to accomplish for growers by indirect methods what they could not achieve directly. In this situation, in view of the express mandate of the Congress to the Office of Price Administration to take such action as will prevent evasion, the Regulation rightfully seemed to the Administrator to be imperative, if price structures were to be maintained in the war against inflation. Through it he kept the selling price of growers within the ceiling and expressly forbade prices beyond it. This was not discrimination but prevention of preference to growers, acting through their own artificial entity, in the form of an otherwise unnecessary and wholly useless corporation, organized and having no excuse for existence except to work evasion. We suggest further that, in view of the character of the previously existing Regulation and the intent of the law, it would seem that the Administrator might well have had remedial action against resales by complainant beyond the ceilings without amendment, for, in determining liability to conform to a statutory standard of conduct, courts are practical and deal with realities; they "look through form to substance and examine the entire transaction"; they "pierce the corporate veil" to determine where the moving force actually lies. Corporate entity is disregarded where not to do so will defeat public convenience, work a fraud or justify a wrong. New Colonial Co. v. Helvering, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348; Taylor v. Standard Gas & Electric Co., 306 U.S. 307, 59 S.Ct. 543, 83 L.Ed. 669; United States v. Lehigh Valley R. Co., 220 U.S. 257, 31 S.Ct. 387, 55 L.Ed. 458; Gulf Oil Corporation v. Lewellyn, 248 U.S. 71, 39 S.Ct. 35, 63 L.Ed. 133; Southern Pac. Co. v. Lowe, 247 U.S. 330, 38 S.Ct. 540, 62 L.Ed. 1142; Fish v. East, 10 Cir., 114 F.2d 177; Groves v. Commissioner of Internal Revenue, 4 Cir., 99 F.2d 179; Dunnett v. Arn, 10 Cir., 71 F.2d 912; Helvering v. Gordon, 8 Cir., 87 F.2d 663. Consequently, when complainant was organized with the growers' co-operative as its only member and the former, notwithstanding its corporate form, existed merely as a nominee of the latter, there became ob-

vious an evasion of the then existing restriction of prices upon resale which we think wholly inconsistent with the underlying conception of price control, and, if generally permitted, wholly destructive of the Congressional intent.

■ The contention that the Amendment is arbitrarily discriminatory in that it prescribes a standard for resale of better grades of tobacco different from that for the resale of low grades is raised for the first time in complainant's brief in this court. Inasmuch as it was no part of the protest, it is not properly before us here. See Section 204(a), Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix, § 924(a); Bowman v. Bowles, Em.App., 140 F.2d 974; Madison Park Corporation v. Bowles, Em.App., 140 F.2d 316.

■ It is insisted that the Amendment, in view of the fact that it prohibits certain resales of tobacco at prices higher than the purchase price, necessarily establishes a maximum price which is not generally fair and equitable within the requirements of the Act. The basic assertion in this respect is that complainant, who purchased tobacco at the maximum price, "is on the face of things required to do business at a loss" and the argument is that this itself demonstrates illegality of the price. However, we find in the record no showing that the maximum prices attacked are insufficient or inadequate. We have no evidence of marketing operations or of costs involved, and there is no attack upon the adequacy of the one cent differential allowed to co-operatives as a satisfactory compensation for the marketing functions which they perform. The requirement that maximum prices shall be generally fair and equitable was not intended by Congress to establish prices which would compensate complainant if it is found to be an artificial device for evasion of price control, serving no other useful purpose. Nor does the Act require, that price regulation shall assure every dealer a profit. Interwoven Stocking Co. v. Bowles, Em.App., 141 F.2d 696; Philadelphia Coke Co. v. Bowles, Em. App., 139 F.2d 349; United States Gypsum Co. v. Brown, Em.App., 137 F.2d 803. Much less can it be said that the intent of Congress, in its war on inflation, was that, in order to be fair and equitable, a price must be fixed at such a figure as will produce a profit through an evasive practice.

■ Complainant insists that the Amendment is aimed discriminatorily solely at it to prevent its performance of contracts of resale. However, the Regulation creates and deals with a class and necessarily affects all within it. Complainant admits that other persons in the same category may be affected. There is no basis, therefore, for any claim of discrimination in this respect. Furthermore, the Administrator is not prohibited from issuing a regulation to stop a destructive practice, which may spread, merely because only a single offender claims to have discovered an effective method of evasion.

■ Complainant asserts that the Administrator failed to comply with Section 2(a) of the Act, 50 U.S.C.A.Appendix, § 902 (a), in that he did not consult with complainant or other representative members of the industry before issuing the Amendment. That section reads: "Before issuing any regulation * * * the Administrator shall, so far as practicable, advise and consult with representative members of the industry which will be affected by such regulation or order." Although complainant was not consulted, the record discloses that the Administrator advised and consulted with representative members of the industry insofar as it was practicable to do so. It was not essential that he also consult and advise with complainant. It would be unfortunate, we think, and beyond our power to assert as a rule of law that the Administrator must consult with price evaders before he may change a regulation so as to eliminate loopholes. The words "so far as practicable" connote in him a reasonable discretion in consultations with members of industry.

■ It is urged that the Amendment was not necessary to effectuate the purpose of the Price Control Act. In the statement of considerations accompanying Regulation No. 494 the Administrator set forth the reasons why price control of cigar tobacco was necessary, stating that the price of the commodity was threatening to rise "to an extent and in a manner inconsistent with the purposes of the Emergency Price Control Act." Complainant does not controvert this. Rather, it admits that its procedure grew out of and had its reason for existence in a desire to return to growers more than they could obtain by the existing ceiling prices, which it did not attack. It complains that the amendment prevents this. It follows quite logically, we think,

that Amendment 2 is not subject to attack as unnecessary to effectuate the purpose of the Act, since, if price control over cigar tobacco is necessary, it can not be effective if the possibility of evasion which is eliminated by the Amendment complained of remains unchecked.

Complainant protests that it was not formed for the purpose of evading the effect of Maximum Price Regulation 494. It declares that all that it did was within the law, within the regulations, and that its action was in no wise clandestine. Lack of secretiveness does not in itself negate evasion as such. Before the issuance of the Amendment, complainant believed there was a loophole, by utilization of which growers could receive more than ceiling prices, and attempted to capitalize the situation for the growers. It does not deny this purpose. Rather, it says of its only member, The Pool: "It sold its tobacco to Great Northern Co-operative Association so that it might be able to pay a patronage dividend to its grower members in accordance with the provision of Supp. Order No. 84." Whether we say complainant evaded price regulations, or whether we say it merely took advantage of existing regulations is of little significance. In any event, it acquired no vested right whereby it can complain of deprivation of an evasive bounty it hoped to receive, had not the Amendment been issued.

Finally, complainant avers that in preventing the resale of tobacco in substantially the same form at more than the purchase price, the Amendment changes established business practices in violation of Section 2(h) of the Emergency Price Control Act. The applicable section prohibits changes in business practices, "except to prevent circumvention or evasion of any regulation, order, price schedule, or requirement under this Act." The Administrator, having concluded that complainant was attempting to evade and circumvent the Regulations, might, by virtue of Section 2(h) change existing practices. Furthermore complainant's record reflects no settled business practices. Indeed, it was a new actor on the stage, establishing a new business, entering for the first time upon a business career; it had no settled business practices and offers no evidence of such practices established by others.

Judgment will enter dismissing the complaint.