**LOHREY et al. v. BOWLES, Price Administrator.**

**No. 198.**

United States Emergency Court of Appeals.

Heard at New York May 21, 1945.

Decided June 28, 1945.

---

[4] 59 Stat. 260, 15 U.S.C.A. § 606b note. [5] 8 F.R. 14641.

1002

Joseph Segal, of New York City, for complainant.

J. D. Hyman, Chief, Court Review Price Branch, of Washington, D. C. (Richard H. Field, Gen. Counsel, Nathaniel L. Nathanson, Associate Gen. Counsel, and Carl H. Fulda, all of Washington, D. C., and Edward F. O'Conner, of Mason City, Iowa, Attys., all of the Office of Price Administration, on the brief), for respondent.

MARIS, Chief Judge.

The complainants are wholesale distributors of fresh and processed pork products. Each owns and operates his own truck, which is refrigerated. He purchases meat products from packers or processors at wholesale and resells to retail butchers and delicatessen shops, obtaining the order and making immediate delivery the same day. He has no financial affiliation with the packer or processor. The deliveries are made over established routes in metropolitan New York and its suburbs. According to the definitions in the regulations governing the maximum prices for distribution at wholesale of fresh and processed pork products the complainants are independent peddler truck sellers.[1]

The maximum prices for pork products when sold by independent peddler truck sellers are established in both MPR 389 and RMPR 148 by giving the peddler truck seller an addition over the maximum prices which he must pay his suppliers. MPR 389, issued May 5, 1943, provided for an additional allowance of $2.00 per cwt.[2] This allowance was increased to $2.50 per cwt. on August 27, 1943 by Amendment No. 7[3] and to $3.00 per cwt. on February 25, 1944 by Amendment No. 11.[4] RMPR 148, issued October 22, 1942, provided for an additional allowance of $1.50 per cwt.[5] On March 21, 1944 the allowance for sales of processed pork by independent peddler truck sellers in Zone 9 north of the Potomac (which area includes metropolitan New York) was increased to $2.00 per cwt. by Amendment No. 16.[6]

The complainants were dissatisfied with the amount of the additional allowances accorded them by the regulations. On June 24, 1943 they filed a joint protest in

Before MARIS, Chief Judge, and MAGRUDER and McALLISTER, Judges.

---

[1] Section 1364.32(a) (10) of Revised Maximum Price Regulation 148 (7 F.R. 8609, 8612) and Section 13(a) of Maximum Price Regulation 389 (8 F.R. 5903, 5905).

[2] Section 12(c) (1) of MPR 389, 8 F.R. 5903, 5905.

[3] 8 F.R. 11956.

[4] 9 F.R. 2239.

[5] Schedule III(d) (2) of Section 1364.35, 7 F.R. 8609, 8616.

[6] 9 F.R. 3083, 3084.

which they challenged the validity of MPR 389 and all other regulations affecting meat, among which is RMPR 148. They requested that the Administrator revoke all meat regulations or in the alternative amend MPR 389 to provide a mark-up of $5.00 per cwt. for peddler truck sellers; that he make an equitable allocation of the meat available for civilian use and establish ceiling prices on all live stock. Except insofar as relief had already been granted by Amendment No. 11 to MPR 389 and Amendment No. 16 to RMPR 148 the protest was denied by the Administrator on December 27, 1944. The complaint was thereafter filed in this court.

The complainants assert in their complaint that the Administrator failed to advise and consult with representative members of the independent peddler truck sellers in the course of promulgating the regulations; refused to appoint an industry advisory committee; and failed to provide for equitable allocation of meat to non-slaughterers, processors and wholesalers. They urge that the regulations be declared invalid for these reasons. They also contend that the regulations are not generally fair and equitable because the special allowances for independent peddler truck sellers provided by the regulations are inadequate.

■■ The complainants' contention that the regulations are invalid because the Administrator did not advise or consult with representatives of the independent peddler truck sellers does not warrant extended discussion. We pointed out in Great Northern Co-op. Ass'n v. Bowles, Em.App., 1944, 146 F.2d 269, that the Emergency Price Control Act, 50 U.S.CA. Appendix, § 901 et seq., requires such consultation only to the extent that the Administrator finds it to be practicable and vests in him a reasonable discretion in this respect. See also Seaboard Oil Company of Delaware v. Bowles, Em.App.1945, 149 F.2d 661. We see no abuse of discretion in the Administrator's decision that it was not practicable for him to consult with each and every segment of the wholesale meat distributors' industry, no matter how small, before promulgating his regulations for the entire industry.

■ Moreover after the regulations were issued the complainants were given unlimited opportunity to present the facts as to the operating experience of peddler truck

sellers. As we have seen, the Administrator acted upon such information, for he amended both RMPR 148 and MPR 389 so as to give the complainants and others similarly situated increased allowances. We may add that since the Administrator has now been favored with the maximum of advice from and consultation with the complainants it would serve no useful purpose for this court to invalidate the regulations upon the ground that the Administrator had not taken advice from that segment of the industry represented by the complainants. For if the regulations are otherwise valid the Administrator could quite properly reissue the identical regulations immediately upon the entry of such an order.

The contention that the Administrator failed to appoint an industry advisory committee in accordance with Section 2(a) of the Emergency Price Control Act is contrary to the facts. There existed at the time of the filing of the protest four separate industry advisory committees for various branches of the pork industry. No formal request was ever made to the Administrator for the appointment of a committee representing the independent peddler truck sellers. Such a formal request is required by Procedural Regulation No. 13 issued June 7, 1943 and revised and reissued November 1, 1944.[7]

■ The contention that the Administrator has provided no equitable allocation of meat is one with which we have no judicial concern. This court is not authorized by the Emergency Price Control Act to review the Administrator's actions with respect to the rationing of the supply of meat. Oswald & Hess Co. v. Bowles, Em. App., 1945, 148 F.2d 543.

We come then to the one contention of the complainants which is the heart of the complaint. They allege that the allowances provided for them by the regulations even as amended are so inadequate that the regulations operate to prevent them from earning net profits comparable to their normal peacetime earnings. Consequently, they urge, the regulations are not generally fair and equitable.

The Administrator, in promulgating his regulations for the wholesale distributors of fresh and processed pork products, made special provisions for independent peddler truck sellers, thus treating them as a distinct segment of that industry. The par-

---

[7] 8 F.R. 7658; 9 F.R. 13133.

ties have assumed that these peddler truck sellers are a unique segment of the industry and that they are consequently entitled to test the validity of the regulations with respect to them as a unit:[8] It has also been assumed that the regulations may be tested as to whether they are generally fair and equitable with respect to that segment by a comparison of its operating experience under price control with the historical margins earned by it in a designated prewar period.[9]

The evidence both as to the prewar earnings and the earnings under price control which is before us leaves much to be desired. However, the Administrator did analyze that evidence and found therefrom that prewar and price control earnings were reasonably comparable. He concluded that MPR 389 and RMPR 148 were generally fair and equitable. For reasons which we shall state we do not deem it appropriate at this time to review all the evidence upon which the Administrator based his conclusion. We note only that in order to determine the net profits earned by the peddlers under price control it was necessary for the Administrator to ascertain the sales expenses incurred by the peddlers. One important item of expense was shrinkage in the course of delivery and sale, which the Administrator found to amount to 0.5% or approximately $5.00 a week per peddler. He arrived at this determination after considering the evidence which is set forth in the transcript filed by him in this court.

The Administrator had not included in the transcript certain statistical data which he had obtained from Boar's Head Provision Company of Brooklyn, N. Y. The complainants objected to this omission, asserting that the purpose was to suppress pertinent evidence. The Administrator thereupon asked leave to submit this data as additional evidence directly to the court, stating in his motion that he had not included it in the transcript because he had not relied upon it in his opinion denying the protest in part, deeming it to be merely cumulative of the evidence contained in the record. We gave leave to introduce the evidence. It is now before us together with the evidence in the transcript upon which the Administrator relied.

 As we have stated, the Administrator found that shrinkage of the meat prod-

ucts dealt in by the peddlers during the course of delivery and sale amounted to 0.5% or approximately $5.00 a week. Based upon a $5.00 weekly shrinkage expense the Administrator found that the net earnings under price control were $45.00 a week which was about the same as the 1942 earnings and reasonably comparable to the 1941 earnings. The additional evidence indicates that the rate of shrinkage amounts to 1.6% or about $12.00 a week. This obviously is not cumulative of the evidence upon which the Administrator relied. If the Boar's Head Provision Company data is correct and the rate of shrinkage is as there indicated the net profits of these peddlers have been substantially reduced below the prewar levels.

We think that in treating the Boar's Head Provision Company data as merely cumulative and in failing to consider it in making the findings upon which he disposed of the protest the Administrator clearly erred. His order denying the protest must, therefore, be set aside and the case must be remanded to him to enable him to reconsider the protest in the light of this and all other relevant evidence which may be available to him.

A judgment will be entered setting aside the Administrator's order denying the protest and remanding the case for reconsideration of the protest in the light of the additional evidence presented to this court and all other relevant evidence which may be available to the Administrator.

---

[8] Compare Heinz v. Bowles, Em.App., 1945, 149 F.2d 277.

[9] Compare Madison Park Corporation v. Bowles, Em.App., 1943, 140 F.2d 316;

315 West 97th Street Realty Co., Inc., et al. v. Bowles, Em.App., 1945, 156 F.2d 982.