**DIRTCHERD DAIRY, Inc., et al. v. BOWLES, Price Administrator.**

No. 182.

United States Emergency Court of Appeals. Heard at Washington Feb. 20, 1945.

Decided July 6, 1945.

---

Before MARIS, Chief Judge, and LIND-LEY and LAWS, Judges.

Edward L. Koepenick, of Washington, D. C., for complainants.

John O. Honnold, Jr., Sp. Asst. to the Associate Gen. Counsel, of Washington, D. C. (Richard H. Field, Gen. Counsel, Nathaniel L. Nathanson, Associate Gen. Counsel, and Henry S. Sellin, Atty., all of the Office of Price Administration, all of Washington, D. C., on the brief), for respondent.

LAWS, Judge.

Four complainants, processors and distributors of fluid milk, cream and milk by-products in the Norfolk-Newport News, Virginia, Area, present objections to the maximum prices established pursuant to the Emergency Price Control Act of 1942[1] for wholesale and retail sales of fluid milk and cream in their Area. Their protest before the Administrator was directed against Supplementary Regulation No. 14 (now Supplementary Regulation No. 14A) to the General Maximum Price Regulation, Maximum Price Regulation No. 280 and certain amendments made to those Regulations during 1942 and 1943.[2]

The principal contention made is that the maximum prices established for milk

[1] 56 Stat. 23, 50 U.S.C.A.Appendix, § 901 et seq.

[2] The Amendments to Supplementary Regulation No. 14 which were protested are: Nos. 77, 124, 185, and 189, issued, respectively, December 12, 1942 (7 F.R. 10480), March 6, 1943 (8 F.R. 2878), June 14, 1943 (8 F.R. 8184), and June 23, 1943 (8 F.R. 8711).

Amendments Nos. 2, 22 and 27 to Maximum Price Regulation No. 280 were protested. These Amendments were issued,

and cream are not generally fair and equitable and do not provide a generally fair margin for processing. In support of this contention, complainants assert that notwithstanding increases which have occurred in the costs of their raw materials and operations, the Administrator has permitted no increases in the ceiling prices of their products. During the wartime period of heavy demand it is obvious, as we have had occasion to notice in many cases, increases in costs of products are more than offset by the elimination of other items of cost and by substantial increases in the volume of sales. The result usually is that no unfairness or inequity is suffered.[3] Therefore we have found one of the best guides as to the general effect of maximum prices is the net profit figures of the industry. In this case during the years 1936 to 1939, before defense activities influenced prices, the profit figures of complainants were as follows:[4]

mentioned do not actually indicate as prosperous a condition as may at first appear. They state that 1936–1939 was an abnormal period and unsuitable to be used as a base because a price war then in effect caused a decrease in profits. They assert also, by way of attempting to answer the figures as to earnings, that each complainant has greatly increased its plant capacity by additional investments of capital and thus, they claim, greater returns than those earned during the prewar period are justified. Upon an examination of the record we find these claims of complainants are not supported by evidence, notwithstanding it appears the Administrator on several occasions specifically provided complainants with opportunities to submit evidence to refute the figures as to earnings. As we repeatedly have pointed out, a presumption of validity adheres to regulations issued by the Administrator and those who complain against them must bear the burden of ad-

|  | Birtcherd | | Rosedale | Peninsula | Total |
|---|---|---|---|---|---|
| 1936 | $6,693.63 | (L) | $ 902.01 | $ 143.56 | $5,935.18 |
| 1937 | 3,698.99 | (L) | 1,558.22 | 3,632.04 | 5,772.81 |
| 1938 (L) | 179.41 | | 313.42 | 1,751.72 | 1,885.73 |
| 1939 (L) | 2,448.61 | | 8,964.08 | 5,222.04 | 11,737.51 |
| Average | 2,598.16 | | 2,319.38 | 2,487.34 | 6,332.80 |

Compared to these figures are the following which represent the profits earned during the latest period reported for each:

ducing evidence which shows the contrary. Mere assertions of facts not admitted by the Administrator, such as are made in this

| | Earnings | | Period |
|---|---|---|---|
| Birtcherd | | $17,425.12 | Year 1943. |
| Rosedale | Loss | 14,492.32 | August 1, 1942–July 31, 1943. |
| Peninsula | | 59,703.47 | August 1, 1942–July 31, 1943. |
| Warwick | | 5,271.61 | January 1, 1943–October 31, 1943. |

The record reveals also, and complainants concede, that their margin between the cost of raw milk and the selling price for fluid milk increased from $.0723 per quart in the 1941 base period to $.08 per quart in 1943. Thus complainants with one exception appear to be in far better financial positions after price control was imposed than before.

■■ Complainants suggest the figures

case, can not be accepted as sufficient to rebut affirmative evidence tending to show fair and equitable earnings of the industry.

■■ It is true there is a showing that one of complainants, Rosedale Dairy, suffered loss of earnings during the period of price control. But there is no indication that these losses came about as a result of price control. The Emergency Price Control Act of 1942, as amended, re-

respectively, December 12, 1942 (7 F.R. 10475), May 13, 1943, (8 F.R. 6357) and June 14, 1943 (8 F.R. 8180).

[3] Interwoven Stocking Co. v. Bowles, Em.App.1944, 141 F.2d 696; Philadelphia Coke Co. et al. v. Bowles, Em.App.1943, 139 F.2d 349.

[4] No figures were listed in the record for complainant Warwick Farms Dairy since the only earnings report for it during the base period was for the second half of 1939. In determining average earnings for the individual companies, losses were figured at 0.

quires that the Administrator shall establish "such maximum price or maximum prices as in his judgment will be generally fair and equitable * * *,"[5] and that "in the fixing of maximum prices on products resulting from the processing of agricultural commodities * * * a generally fair and equitable margin shall be allowed * * *."[6] Emphasis thus is laid upon the general situation of industry, not the particular situation of one or a few who whether by reason of price controls, or by reason of individual misfortunes, bad management or other untoward events, might suffer losses. While no formula has yet been evolved to determine what part of those in an industry must be shown to be subjected to hardship in order to establish that a regulation is not "generally" fair and equitable, it is clear beyond doubt that the Act makes no attempt to guarantee profits to individuals.[7] There is no evidence which suggests that the state of Rosedale Dairy's earnings is in any degree representative of others in the industry; such evidence as is in the record strongly indicates the contrary. It follows therefore that the apparent losses of earnings of Rosedale Dairy are of no significance in the disposition of this case.

Another objection urged is that the Administrator unlawfully failed to consult with the industry in the Norfolk-Newport News Area. The Emergency Price Control Act states that "before issuing any regulation or order * * * the Administrator shall, so far as practicable, advise and consult with representative members of the industry which will be affected by such regulation or order * * *." Sec. 2(a). If one is to establish a disregard of this requirement of the Act, where plainly great latitude is given the Administrator to exercise his judgment, the evidence adduced must be convincing both in establishing the point of failure to consult industry and the point of the practicability of such consultation before imposing controls.[8] We have examined the record before us and find it is entirely unconvincing in respect of either of these points. There is another reason why complainants' contention must fail. As we pointed out in a recent case

where a similar contention was made,[9] since the Administrator has in the protest proceedings "been favored with the maximum of advice from and consultation with the complainants it would serve no useful purpose for this Court to invalidate the regulations upon the ground that the Administrator had not taken advice from that segment of the industry represented by the complainants. For if the regulations are otherwise valid the Administrator could quite properly reissue the identical regulations immediately upon the entry of such an order."

Other arguments made by complainants have been considered by us and found to be without merit.

The complaint is dismissed.

[5] § 2(a).

[6] § 3, Stabilization Act of 1942. 56 Stat. 765, 50 U.S.C.A.Appendix, § 963.

[7] United States Gypsum Co. v. Brown, Em.App., 1943, 137 F.2d 803.

[8] See Seaboard Oil Company of Dela-ware v. Bowles, Em.App., 1945, 149 F. 2d 661, and Great Northern Co-op. Ass'n v. Bowles, Em.App., 1944, 146 F.2d 269.

[9] Lohrey v. Bowles, Em.App., 1945, 156 F.2d 1001.