**WEISEL & CO., Inc., v. BOWLES, Price Administrator.**

No. 256.

United States Emergency Court of Appeals.
Heard at Chicago, Ill., Nov. 30, 1945.
Decided Dec. 21, 1945.

Bert Vandervelde, of Milwaukee, Wis., for complainant.

Carl H. Fulda, of Washington, D. C. (Richard H. Field, Gen. Counsel, Jacob D. Hyman, Associate Gen. Counsel, and John J. Downey, Jr., Atty., all of the Office of Price Administration, all of Washington, D. C., on the brief), for respondent.

Before MARIS, Chief Judge, and McALLISTER and LINDLEY, Judges.

LINDLEY, Judge.

Complainant, a producer and manufacturer of sausage, protested Maximum Price Regulation No. 389, Sections 2(c) and 12(c) (2), issued May 5, 1943 and Amendments No. 7 and No. 11, issued August 7, 1943 and February 25, 1944 respectively. (8 F.R. 5903) It asserted arbitrary and capricious discrimination in (1) that it was not permitted to sell sausage f.o.b. point of origin in other than carload lots, whereas sellers of kosher sausage, beef sausage and special pork sausage of type 1 might do so; (2) that though distributors might ship by truck at the point of origin price and add thereto the transportation charges, they might not do so by railroad in less than carload lots; (3) that they might ship by express to purveyors of meals on a similar basis but might not do so to retailers, and (4) that a seller was forbidden to ship by express, treating the point of origin as local delivery and adding to the zone price 25¢ and 50¢ as provided in Section 12(c) (2) of MPR-389. It further contended that the regulation, with its amendments, operated to compel changes in business practices and means and aids to distribution long established in the industry in violation of subdivision (h) of Section 2 of the Emergency Price Control Act as amended, 50 U.S.C.A.Appendix § 902(h). It sought amendment to permit it, at its option, to sell either at the zone price fixed in the zone in which the seller is located and to require the buyer to pay all transportation charges or to sell at the zone price in the zone in which the buyer is located, the seller paying the transportation charges.

The Administrator denied the protest, approving the recommendation of a Board of Review to that effect. Thereupon complainant came to this court, presenting substantially the same contentions as it had before the Administrator and praying that the provisions of the regulation as amended creating the situation and producing the results complained of be set aside.

By the regulation the Administrator established price ceilings, fixing the base price per hundred weight for each specific product. Section 14 set up eleven geographical zones; Section 12(b) fixed the zone differential by which the base price might be increased when delivery is made in any one of the several zones. Section 12(c) provided for certain additions to base prices, including local delivery charges to the buyer's store door. Thus, the base prices, plus the provided additions, became the controlling ceiling prices.

The eleven zones follow the pattern of those created by the Administrator for the meat industry generally. Complainant is located in Milwaukee in Zone 4-A and sells about one-third of its product in that area. It relies upon the fact that two thirds of its sales are made to customers beyond its immediate community and contends that for many years it has been the practice of complainant and two other producers to ship all their products on an f.o.b. basis, thereby collecting from the purchaser the cost of transportation. Complainant asserts that by prohibiting continuation of this practice, the Administrator has brought about unreasonable interference with established business practices, and that such interference is wholly unnecessary for maintenance of price control. In this connection, it is essential to keep in mind that, under the evidence of the Administrator, the practice of complainant and the two other manufacturers of selling wholly on f.o.b. basis, is unique in an industry which has never generally engaged in the practice to any appreciable extent. This fact is not controverted by complainant and is, to our mind, determinative of complainant's contention.

The regulation was promulgated after the Administrator had set up his course of procedure for the meat industry generally. Inasmuch as sausage is made largely from products of that industry, he found, as in the case of meat generally, that the historical price relationship between the various parts of the country reflected substantially the difference in transportation costs from the place of production to the various zones and that the sausage "industry was well adapted to the plan of fixing specific prices by adding a transportation allowance to the base prices." His prices, so fixed, reflect differentials substantially equal to the differences in freight rates in carload lots in the several zones. He found further, however, that there was an important difference between meat products in general and sausage in particular, for, while the former frequently travel great distances, the latter is usually sold relatively near the point of production, a greater part of the product "being consumed within less than 200 miles of the point of origin." In various statements of considerations he set forth at some length the advantage of zone prices and pointed out that by virtue of his provisions retailers could easily ascertain the ceilings of their suppliers; that retail sellers in any particular area, accustomed to supplying approximately the same market, were thereby placed in a position of competitive equality to one another, and that, thus, effective control of retail prices was facilitated. Armour & Company v. Bowles, Em.App., 148 F.2d 529. He elaborated upon his conclusion that authorization of f.o.b. sales in all cases would materially increase sausage costs to the retailers and seriously jeopardize retail ceiling prices. All this indicated a reasonable attempt in our opinion to bring about effective maintenance of price control of the retail level.

Complainant contends that this reasoning is fallacious and that if its prayer to be allowed an option to sell all goods f.o.b. were allowed, its purchasers would still realize a comfortable margin of profit. Tables are submitted showing the respective and various prices in the different zones computed upon an f.o.b. shipping basis in less than carload lots or by express. We think it unnecessary to burden the record with a repetition of the many figures submitted. It might be well to observe, however, that complainant, in making sales to persons in other zones and charging the ceiling prices in the zones where deliveries are made, faces certain obvious results. Thus, in a shipment to Zone 5, complainant is able to collect a wholesale price of 50¢ per hundred weight over that of its home zone. The additional cost imposed upon it by compelling it to pay transportation charges in less than carload lots to that

zone is 60¢ per hundred weight, or a decrease in realized proceeds of sale over and above what it would be able to get if it were permitted to sell at its own zone price plus delivery charges, of 10¢ per hundred weight. In other words, the Administrator, in adding the differentials for cost of delivery, has, in this particular instance, almost equaled the differential imposed upon complainant by compelling it to pay transportation charges to Zone 5. In Zone 6, the sale price over and above that of the home zone is 75¢ per hundred weight; the additional charge imposed on complainant for less than carload shipments, 88¢. In Zone 9 the differential in zone prices is $1.50 and the additional cost for less than carload shipments $1.54. In other zones, further removed, the differential increases. It is clear from the figures submitted that the Administrator, in laying out the procedure for determination of retail ceilings, has considered the country as a whole and laid out his zones in an obviously reasonable manner based upon underlying reasons therefor and that his figures are not far out of line with differentials claimed by complainant to exist. We think we can not conclude that this technique was in itself unreasonable or discriminatory, for substantial evidence supports the Administrator's findings.

Bearing upon this phase of the case, it should be observed that it is the intent of the Act eventually to prevent rise of retail prices and that if complainant were permitted to charge its local zone price for less than carload lots plus freight charges, the difficulty of checking upon and maintaining the retail price structures would be tremendously increased. One can appreciate that the results in the extreme instances cited by complainant would put the retailers in those cases at the mercy of the wholesaler and tend to promote black market activities with resulting wrongful increase in retail ceilings. It was the Administrator's intent to avoid such a result and we think his efforts to do so have been reasonable and proper. The alternative which complainant suggests, viz. that it be permitted to sell on an f.o.b. basis in all instances "even though a few retailers may violate the law as to ceiling prices," we think contrary to the spirit and purpose of the legislation. Surely it would not justify the Administrator's surrender of the mandatory duty imposed upon him by Congress to "hold the line." We think the evidence

is such that the only proper conclusion is that the regulation is well adapted to the industry, generally fair and equitable and reasonably essential to maintenance of price control.

Complainant asserts, however, that its sales have been curtailed. We find no evidence supporting this contention; nothing to disclose lack of profit, loss of business or other unfortunate results justifying relief. Furthermore, even if complainant's profit has been decreased, a fact wholly lacking in proof, that fact would not be sufficient in itself to invalidate the regulation, for if the latter is generally fair and equitable, that is sufficient; the law does not assure profitable operation for each and every seller. Birtcherd Dairy Inc., v. Bowles, Em.App.1945, 156 F.2d 1004; Interwoven Stocking Company v. Bowles, Em. App.1944, 141 F.2d 696; Philadelphia Coke Company, et al. v. Bowles, Em.App. 1943, 139 F.2d 349; United States Gypsum Company v. Brown, Em.App. 1943, 137 F.2d 360, certiorari denied 320 U.S. 775, 64 S.Ct. 88, 88 L.Ed. 465.

Complainant insists that permission to manufacturers of kosher, beef and No. 1 pork sausages to sell f.o.b. their plants in less than carload lots and to pass on the transportation charges to purchasers amounts to arbitrary discrimination. But the Board of Review, whose recommendations the Administrator approved, commented on the fact that production of these items is concentrated at comparatively few places in the United States and that they are not produced and distributed largely in local communities as are other sausages. Complainant's products are those of the industry generally, and the Board believed that in view of the wide manufacture of sausages and of the short distances between production centers and places of consumption, the delivered price method preserved the customary pattern of the industry as a whole. Complainant insists that there is no difference between manufacture and distribution of sausage generally and that of the three specialty items, but there is an underlying distinction found in the record. The three specialty items are manufactured only in a few places and their consequent wide distribution differs from the situation as to the remainder of the sausage industry. We consider this sound classification and valid basis for distinction. Cudahy Brothers Co. v. Bowles, Em.App. 1944, 142 F.2d 468; Pfeiffer

Brewing Company v. Bowles, Em.App. 1945, 146 F.2d 1006, certiorari denied 324 U.S. 865, 65 S.Ct. 914.

■ Complainant also asserts discrimination in the fact that f.o.b. shipments by truck are allowed and that in such cases it may charge the local zone price plus delivery into other zones. But we think the Board of Review and the Administrator correctly analyzed the evidence in this respect when they found that f.o.b. sales by truck are justified because of the very nature of the industry and the basic fact that distribution of sausage is ordinarily limited to shipments not exceeding 200 miles from point of origin; that transportation by truck is well adapted for distribution over such short distances; that truck service is not ordinarily available to more remote points, especially refrigerated truck service. Upon these specific facts the Administrator concluded that sound basis existed for placing truck shipments and freight shipments in less than carload lots on a different footing. We find nothing in the record to impeach the propriety of that conclusion. Obviously sausage is perishable and its transportation by truck is necessarily limited to short distances. In such case the cost increase for the retailer resulting from f.o.b. shipments is insignificant and is readily absorbed. The same limitations do not exist with regard to long railroad shipments and, in so far as shorter distances are involved, complainant does not need to ship by railroad in less than carload lots or by express.

■ Complainant also charges that discrimination arises from the provision authorizing f.o.b. shipments by express to purveyors of meals. The record discloses that all meat regulations permit shipments to such purveyors by express f.o.b. point of origin for the reason that this procedure has been found to be in accord with the customary and usual buying practices of hotels and restaurants. The Administrator thought it unwise to interfere with such established practices, inasmuch as he found that their continuation did not in any way threaten the control of retail prices. He comments that such shipments have never been made in less than carload lots by freight and that if complainant is injured by being refused permission to ship in such lots to purveyors and so shows, he will give consideration to amendment of the regulation so as to include such shipments.

■ Complainant insists that inasmuch as the regulation permits sales f.o.b. in carload lots but not in less than such lots it works an unreasonable discrimination in favor of the larger packers. The first meat price fixing regulation, RMPR 148, permitted sales of meat on an f.o.b. basis. The Administrator found that this resulted in the industry turning from its previous practice of selling on a delivered basis and initiating generally sales f.o.b. requiring the buyer to absorb less than carload freight charges. In the amendment he sought to correct this abuse and, consequently, forbade sales when the product was delivered in less than carload quantities. He did not find any abuse in connection with truck shipments and hence did not make the provision applicable to them. In view of these facts and the evident purpose of the Administrator in establishment of zones and differentials therein upon the basis of retail prices in the respective zones and bearing in mind that the purpose of all his acts was to prevent the rise of retail prices, we find nothing unreasonable or discriminatory in this respect. The delivered zone price in any zone is substantially the same as the zone price in the seller's zone plus carload freight. To provide that in smaller shipments an additional element of cost of transportation may be added would be to upset and prevent coordination of the retail buyer's costs. The ensuing difficulties in enforcement, the implied encouragement of violation of retail ceiling prices and black marketing, we think, supply sufficient justification for the regulation.

We have given consideration to all other suggestions of complainant and conclude that they are insufficient to justify nullification of the regulation as amended.

Judgment will enter dismissing the complaint.