VITAMINS, Inc., v. BOWLES,
Price Administrator.

No. 183.

United States Emergency Court of Appeals.

Heard at Chicago March 23, 1945.

Filed May 15, 1945.

Harry H. Ruskin, of Chicago, Ill. (Samuel B. Perlman and Adolf Loeb, both of Chicago, Ill., on the brief), for complainant.

Jacob D. Hyman, Chief, Court Review Price Branch, of Washington, D. C. (Richard H. Field, Gen. Counsel, Nathaniel L. Nathanson, Associate Gen. Counsel, and Josephine H. Klein, Atty., all of the Office of Price Administration, all of Washington, D. C., on the brief), for respondent.

LINDLEY, Judge.

Complainant questions the validity of Maximum Price Regulation 203 issued August 15, 1942, Amendment No. 1, issued January 26, 1944, and Amendment No. 2, issued July 19, 1944.

Regulation 203 established maximum prices for sales of Vitamin A products as follows: 14¢ per million U. S. P. units for natural Vitamin A oil of a potency of not less than 6,000 nor more than 60,000 U. S. P. units per gram; 20¢ per million units for similar oil of more than 60,000 but less than 200,000 U. S. P. units per gram and 30¢ per million units for oils of more than 200,000 U. S. P. units per gram and for all concentrates. The latter were defined as (a), Vitamin A products derived from the natural oil "by distillation, solvent extraction, * * * crystallization or fortification with another concentrate," having a potency of four or more times as great as that of the original oil; (b), Vitamin A natural oils having a potency of 200,000 or more units per gram, and, (c), blends of a concentrate and edible vegetable oil.

By Amendment No. 1, the Administrator removed the exemption from price control of oil of less potency than 6,000 U. S. P. units per gram, except in compounds in which such oil is combined with Vitamin D in blends, products with which we are not concerned in this cause. The amendment established a maximum price of 14¢ per million U. S. P. units for oil with potency of 40,000 or less U. S. P. units per gram. The ceiling price of oil having a potency of between 40,000 and 200,000 U. S. P. units per gram was fixed at 14¢ per million units, plus one-tenth of a cent for each 1,000 U. S. P. unit per gram increase in intensity of concentration in excess of 40,000. Oil containing 200,000 or more

units per gram and blends of a concentrate and an edible vegetable oil were defined as concentrates and the ceiling price fixed at 30¢ per 1,000,000 units.

Amendment No. 2 provides essentially that no blends of concentrates and natural Vitamin A oil shall be sold unless a specific maximum price shall be authorized by the Office of Price Administration. Under its terms, a manufacturer, in order to sell such blends lawfully, is compelled to apply for and obtain establishment of a ceiling price. In the amendment, the Administrator discloses that in no event will he approve a maximum price of a blend in excess of the amount which the components of the blend would produce at their respective ceilings, if sold separately, and that, in cases in which he determines that the blending will lead to circumvention and evasion, he may set a maximum price lower than the sum of the maximum prices for the components.

Complainant, a manufacturer of Vitamin A products, filed a protest against the regulation and the amendments and upon denial presented its complaint here.

█ Complainant contends that M. P. R. 203, as promulgated and amended, is not generally fair and equitable, in that it fixes the same ceiling price per unit for all Vitamin A concentrates of more than 200,000 units per gram as for concentrates of 200,-000 units per gram. It insists that only after issuance of the regulation did Vitamin A concentrates of greatly higher potency than those of 200,000 units per gram come into commercial production and distribution; that, since promulgation of the regulation, products of from 500,000 to 1,000,000 units per gram have become common and staple in the industry; that 95% of the concentrates sold by it have a potency of 1,000,000 or more U. S. P. units per gram; and that, in treating all concentrates of whatever potency similarly, the Administrator has arbitrarily failed to give recognition to the different and higher qualities of high potency concentrates.

Complainant does not aver or offer proof that the regulation imposes hardship upon producers of concentrates or that they are, by the regulation, barred from realization of reasonable profits or have imposed upon them financial hardship, all of which is usually regarded as essential in order to sustain a finding that a regulation is not generally fair and equitable. Philadelphia Coke v. Bowles, Em.App., 139 F.2d 349; Gillespie-Rogers-Pyatt Co. et al. v. Bowles,

Em.App., 144 F.2d 361. Rather, its claim is that, under the facts presented, it is inherently unfair to establish the same maximum ceiling per unit for comparatively high potency compounds as for those of relatively low potency. It relies upon its statement in evidence that its raw material costs in production of concentrates of a potency of "1,000,000 U. S. P. units per gram or higher is more than 20% in excess of the raw material cost of producing Vitamin A concentrates of the potency of 200,000 U. S. P. units per gram" and that in producing the higher potency concentrates this differential is increased by loss incurred in conversion. Unfortunately we are left in the dark as to whether this asserted cost differential represents an increasing differential per U. S. P. unit or per gram. At any rate it amounts only to evidence of a cost differential unaccompanied by any proof of inadequacy, without which we can not say as a matter of law that the ceilings are arbitrary, capricious or not generally fair and equitable.

Complainant, however, points to the historical fact, as it claims, that prices in the Vitamin A industry have, generally, traditionally corresponded in amount to the potencies of the products and that the price per million units has increased proportionably with the intensity of the concentration. It relies not only on a statement in evidence to that effect but also on the Administrator's statement of considerations reading partly thus: "Vitamin A bearing oils are usually quoted, bought and sold at a given price per million units of Vitamin A, rather than at a certain price per gallon of oil. Usually the less oil there is, the higher is the price, because it has been an industry practice to quote higher prices as the Vitamin A potency per gram of oil increases. This is based on the fact that potency is one major test of quality. Studies made by the Office of Price Administration indicate that the special problems relative to Vitamin A oils can be more adequately solved by a maximum price regulation establishing maximum prices for Vitamin A oils and concentrates specifically." Respondent insists that in this quotation he was considering, primarily, vitamin oils rather than concentrates. Be that as it may, we think the evidence such that he was justified in terming relative potency one of the major tests of quality and in refusing to adopt it as the sole test. At any rate the evidence does not disclose that his method and its resulting ceilings were in-

adequate or not generally fair and equitable, or that his finding that by the regulation and Amendment No. 1 the weighted average price of Vitamin A was not unfairly fixed, was unreasonable. This conclusion is reinforced by the fact that, before the regulation was amended, he had found certain evasive practices in the industry in blending, resulting in realization of the higher prices for the lower potency oils. In order to adopt the degree of potency as the only test of quality and as the only standard to be followed in fixing prices we would have to read into the record non-existent evidence. To rule as a matter of law that variation in costs, plus proof of a mere tendency of prices of natural oil historically to follow degrees of potency, invalidates a ceiling price for concentrates, not shown to be inadequate or to be such as to bring upon complainant or other producers financial hardship, would be beyond the proper exercise of our legitimate functions.

■ The contention that the Administrator's failure to fix specific higher prices for concentrates of higher potency is a violation of Section 2(h) of the Act, 50 U. S.C.A.Appendix, § 902(h), first presented in the brief, comes too late for our consideration. Machen v. Bowles, Em.App., 139 F.2d 359. However, it may well be observed that the record is wholly lacking in proof of an established industry practice, within the meaning of the Act, for complainant's own evidence is that there was little or no production of concentrates above a potency of 200,000 units per gram at the time the regulation was issued; that dealing in such concentrates was then practically unknown to the industry and that manufacture and distribution of such relatively high potency concentrates have become substantial or extensive only since then. Obviously, there could have been no established practice in an non-existent industry.

■ Complainant insists that, since Amendment No. 2 may work out to prevent it from obtaining even 30¢ per gram of high potency concentrates, if the compound results from blending concentrates with natural Vitamin A oils, it is discriminatory and capricious. In his statement of considerations for this amendment the Administrator declared that he had found that it had become a practice in the industry to blend high potency concentrates with low potency oils, thereby enabling the blender to realize in the sale of the higher priced blended concentrates more than the ceiling prices for the units contributed to the blend by the lower potency oils. This he considered an evasion of the ceilings for the lower priced units. Furthermore, the use and sale of the lower potency units in such blends and as a part thereof at the higher prices of the blends, had attracted the available supply of lower priced oils to the blends and removed them from the open market, to the detriment of pharmaceutical preparations. By the amendment he sought, (1), to prevent evasion by selling low priced oils at over ceiling prices as a part of higher ceiling priced blends and, (2), maintenance of a supply of lower priced oils to meet the legitimate demand for them for use in medical compounds.

Complainant does not controvert the facts relied on by respondent in this connection but asserts that it and others in the industry do not compound blends for the purpose of getting over-ceiling prices for oils of relative low potencies and that blending is a necessary practice in manufacturing processes in order to bring concentrates down from too high potency to that needed to fill a specific demand. Thus, if concentration results in a product with a potency of 1,346,000 units per gram, and the result desired is a potency of 1,000,000, it is necessary to dilute the concentrate with lower potency oils to reduce the final potency to the desired point. To deny it this privilege is to penalize it unfairly, complainant says. It suggests, further, that the Act endows the Administrator with no authority to control production or supply of a commodity by the means of price regulation.

Despite complainant's protest in this respect the fact remains that an evasive practice had grown up which had also produced a shortage of low potency oils in the open market. Complainant does not satisfactorily explain why blending, if essential, might not be accomplished by substituting some sympathetic edible vegetable oil for Vitamin A oil, thus evading any suspicion of attempting to realize over-ceiling prices for its Vitamin A oil. There, is, then, no inherent invalidity in the regulation in its attempt to fix prices of blends so as to prevent evasion. It is clear that the Administrator has the power to prevent practices so disruptive of the purpose of the Act.

Complainant urges further, however, that the Act does not empower respondent to control the supply of natural oil, so as to

keep it flowing in the ordinary current of trade, under color of price-fixing. The argument is that the authority of the Office of Price Administration in this respect, being defined in Section 2(e) of the Act, wherein Congress has provided for assurance of necessary production by granting power to buy· and store commodities and grant subsidies, must be strictly limited to the specific metes and bounds named therein. This is application of the age-old maxim *expressio unius est exclusio alterius,* which it is always proper to consider in statutory construction. 2 Sutherland Stat. Cons. 2d Ed. 916. Botany Mills v. United States, 278 U.S. 282, 49 S.Ct. 129, 73 L.Ed. 379. But we must bear in mind that Section 1(a) of the Act, 50 U.S.C.A.Appendix, § 901(a), incorporates in the express purposes of the legislation this language: "to eliminate and prevent * * * manipulation, speculation, and other disruptive practices resulting from abnormal market conditions or scarcities caused by or contributing to the national emergency; * * * to assist in securing adequate production of commodities and facilities." By Section 2(a) the Administrator is authorized to establish such ceiling prices as are generally fair and equitable and will "effectuate the purposes of this Act." Section 201 (d) further empowers him to issue such regulations as he may deem necessary or proper "to carry out the purposes and provisions of the Act." This is wide authority, and when we remember that Congress was seeking to achieve and preserve stabilization of national economy and to prevent, so far as possible, its disruption, the Administrator's prerogatives take on even wider significance. When respondent found that blending had led to price evasion and shortage of supplies for the pharmaceutical industry and acted in order to remedy the situation, he was well within the mandate of Congress to adopt such measures as would "assist in securing adequate production," "eliminate and prevent * * * disruptive practices resulting from abnormal * * * scarcities," "effectuate the purposes of this Act" and "carry out the purposes and provisions of this Act."

Complainant insists, however, that Amendment No. 2 will not bring about the result sought to be reached by the Administrator in that it will not provide an· adequate supply of low potency Vitamin oils, for the reason that it does not restrict the blending of those oils with concentrates or oils other than Vitamin A and urges support for such contention in the fact that certain manufacturers are blending low potency Vitamin A oils with Vitamin D in producing animal foods. The Administrator replies that the blending of low potency Vitamin A oils with Vitamin D oils in such food is an established industry practice; that the original regulation exempting oils below 6,000 U. S. P. units, purposely, did not affect such practice; that in Amendment No. 1 he tried to avoid interference with it by continuing the exemption when the oils were blended with Vitamin D oils. He pointed out in his consideration that such animal food blends "are sold in bulk as oil rather than on the basis of their Vitamin A content." There is no showing that such exemption results in any price ceiling evasion or that it has contributed to the shortage of low potency Vitamin A oils. Indeed, evidence of incentive to get or possibility of getting more than ceiling prices for low potency oils, in combinations of Vitamin A and Vitamin D oils, is wholly lacking and until it is presented, even if then, the perpetuation of the disruptive practice in the Vitamin A oil industry sought to be corrected can not be justified. The evidence is such that we are powerless to conclude that the regulation as amended is arbitrary or capricious.

Complainant further asserts that Amendment No. 2 unreasonably and arbitrarily requires blenders to secure from the Office of Price Administration maximum prices for blends in advance of sale. The applicant must disclose the component elements of the compound and the necessity for offering the blend for sale. The Administrator announces that he will limit the price to the sum of the maximum prices of the components and that he will, if it is necessary to prevent evasion, place the ceiling at less than this sum. In view of the penalties provided in the Act against violation, says complainant, no necessity exists for the Administrator to arm himself with additional weapons against violation or evasion. Respondent replies that he has no intent to prohibit blending; and that he has avoided such an extreme measure in his attempt to cure the evils arising from indiscriminate blending, resulting in shortages of low potency oils and evasion of ceiling prices, and preserved the right to blend, subject to scrutiny to determine whether any disruptive or evasive feature exists. He insists that it is his policy to permit blending and to fix a ceiling for the

blend when circumstances justifying such action are shown.

We think the record reflects no evidence that his action was not reasonably adapted to the solution of his problem and no evidence that complainant is injured or subjected to hardship. It has not filed any application for establishment of a ceiling price for any of its blends. If and when it files such applications and meets with arbitrary denial by respondent, it will have ample opportunity to protest and to complain here. We find no support for a decision that the amendment is inherently arbitrary on its face and we are without jurisdiction to hold that it is invalid as applied to complainant in advance of a hearing upon specific facts in pursuance of an application made by complainant.

Judgment will enter dismissing the complaint.