**SUPAK et al. v. PORTER.**

Nos. 246, 257.

United States Emergency Court of Appeals.

Heard at St. Paul, Aug. 29, 1946.

Reheard at Chicago, Oct. 17, 1946.

Decided Dec. 2, 1946.

MARIS, C. J., and MAGRUDER, J., dissenting.

——————◆——————

Josiah E. Brill, of Minneapolis, Minn., for complainants.

William R. Ming, Jr., Chief, Court Review Price Branch, and Israel Convisser, both of Washington, D. C. (Richard H. Field, Gen. Counsel, and Carl A. Auer-

bach, Associate Gen. Counsel, OPA, both of Washington, D. C., and Murray Steyer, of Brooklyn, N. Y., on the brief), for respondent.

Before MARIS, Chief Judge, and MAGRUDER, McALLISTER, LINDLEY and LAWS, Judges.

LINDLEY, Judge.

These two consolidated causes present an issue as to the validity of Section 13(a) of Revised Maximum Price Regulation No. 287 (8 F.R. 9122) issued and effective June 29, 1943. The first is a proceeding under Section 204(e) (1) of the Emergency Price Control Act, 50 U.S.C.A.Appendix, § 924(e) (1), and the second a complaint to review the denial of a protest under Section 204(a). So far as our disposition is concerned, the issue is the same in each case.

Complainants are manufacturers of women's slacks and slack suits. During the period in question, June 29, 1943 to May 1, 1944, they calculated their ceiling prices upon the basis of the General Maximum Price Regulation. Apparently merely because of inadvertence, they failed to observe the promulgation of Revised Maximum Price Regulation No. 287 on June 29, 1943, which provided that on or before August 15, 1943, a manufacturer should file with the Office of Price Administration in duplicate a pricing chart containing a list of category numbers delivered in March, 1942, the selling price of goods in each category delivered in that month, the "average initial percentage margin" taken on each line listed, "the maximum allowable margin," "the minimum allowable cost," and the terms of sale for each. Subsections 7(b) and (c), contained instructions for calculation of the manufacturer's average initial percentage margin and his maximum allowable margins. In subsection 7(b), the Administrator directed attention to Appendix D containing instructions for calculation of the "initial percentage margin." Complainants, having failed to file the chart, became subject to Section 13 (a) of the regulation providing that a manufacturer who does not file his chart and receive an acknowledgement of such

filing, will be limited to a maximum allowable margin of 15% until he files the required chart.

Complainants presented evidence that, as they had inadvertently overlooked issuance of the revised regulation and had erroneously believed themselves bound by the General Maximum Price Regulation, they had sold at prices determined thereunder which were lower than they would have been justified in charging had they known of and complied with Revised Maximum Price Regulation No. 287 by filing charts. They now assert that, as applied to them and others similarly situated, Section 13 (a), limiting them to a fixed margin of 15%, constitutes an attempted imposition of a penalty by the Administrator, and is arbitrary and discriminatory; that enforcement actions based thereon result in property being taken without due process of law, and that Section 13(a) is not generally fair and equitable but wholly unreasonable. Respondent answers that the regulation does not work a penalty; that it is a price fixing provision within the scope of his authority under the Act and in compliance with the requirements prescribed by Congress.

We prefer to accept respondent's contention that Section 13(a) is not a penalty provision, but, rather represents an attempt upon the part of the Administrator to discharge his duty under the Act to fix ceiling prices and that it must be tested by the requirements of validity of a price regulation. It follows from this premise, we think, that evidence of excusable negligence is of no relevancy, but that our inquiry must be directed to whether the regulation measures up to the standards prescribed by the Congress. The Administrator stresses the fact that the price fixed is an interim ceiling; but we do not consider that fact of determinative character, for we do not understand that the standards for a temporary ceiling are any less exacting in their essentials than those fixing permanent ceilings. Every price established, whether temporary or permanent, must comply with the congressional requirements. Upon this basis we approach the question of legality.

■ The record contains no statement of consideration of economic data upon which the Administrator based Section 13 (a). In fact, the only evidence of conditions in the industry consists of the Administrator's statement that he had made an analysis of operating reports of 15,131 garment manufacturers for the year 1942 which reflected the fact that of these, 96.7% had operating margins over direct cost exceeding 15%; 91.9% margins exceeding 19.55%; 81.3% exceeding 23.9%, 52.1% exceeding 30%, 41.6% exceeding 32.6% and 24.1% exceeding 36.95%. The analysis further disclosed that 70% of the 15,000 manufacturers had margins between 21.74% and 39.12%; that only 12.7% were below 19½% and that 17.3% had margins running from 41.30% up to 60% and over. The Administrator contends that these statistics afforded justification for fixing a ceiling price applicable to persons who had not filed charts of 15% in margins of indirect cost over direct cost, inasmuch as some 3% of the 15,000 manufacturers had such low margins. Complainants reply that it was arbitrary and discriminatory to fix a margin less than that which 97% experienced, and refer to their own margin as in the neighborhood of 38%. The Administrator criticizes complainants' calculation of its margins but, even under the Administrator's analysis, they would run in excess of 22%. However, we think discussion of complainants' margins wholly irrelevant, for this is not a suit for adjustment of hardship but a test of the validity of a price fixing regulation. There is no evidence as to what would be a reasonable margin other than the figures referred to above. Indeed, it is not our function here to decide what is reasonable; our duties do not encompass administrative action, for Congress has placed upon us merely the responsibility of determining whether a regulation is generally fair and equitable or arbitrary and discriminatory.

■■ The Supreme Court said in Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 666, 88 L.Ed. 834: "The boundaries of the Administrator's permissible action are marked by statute. It directs that the prices fixed shall effectuate the declared policy of the Act to stabilize commodity prices so as to prevent war-time inflation, and its enumerated disruptive causes and effects. In addition, the prices established must be fair and equitable, and in fixing them the Administrator is directed to give due consideration, so far as practicable, to prevailing prices during the then designated base period, with prescribed administrative adjustments to compensate for enumerated disturbing factors affecting prices." The basic requirement, therefore, is that ceiling prices must be generally fair and equitable and that, in fixing them, the Administrator must give consideration to prices prevailing in the industry during the base period. Yet there is no evidence in this record that the Administrator, in fixing a 15% margin for indirect costs, gave consideration to prices or rates prevailing during the relevant period. We do not think it reasonable to fix a price ceiling at a figure which ignores base period prices or margins, or to adopt a figure below that prevailing in over 96% of the industry. Whether the ceiling be permanent or temporary, such action is arbitrary because of lack of supporting evidence. No matter how well intended the Administrator may have been, the regulation reflects a price ceiling fixed without compliance with the safe-guards Congress has prescribed; hence it is arbitrary and unreasonable.

The Administrator suggests that had he not adopted this provision fixing an arbitrary margin, he would have been compelled either to forbid manufacture and thus curtail production, or to refrain from fixing any ceiling. In view of his practice in other instances, we doubt that he is without adequate means by which to frame a reasonable maximum ceiling provision based upon facts derived from the historical records of the industry.

■ Nor can the regulation be justified by the record upon the ground that it was necessary in order to prevent evasion and circumvention. Section 2(g) of the Act, 50 U.S.C.A.Appendix, § 902(g), provides that regulations "may contain such provisions as the Administrator deems necessary to prevent the circumvention or evasion thereof." Subsections 2(h), (c) and (d)

contain somewhat similar provisions, all of which condition the Administrator's authority to take such steps upon a precedent finding or judgment that the proposed action is necessary in order to prevent evasion or circumvention or to effectuate the purposes of the Act.

The statement of considerations reflects no finding or judgment by the Administrator that the regulation was necessary in order to prevent circumvention or evasion. Nor has the Administrator made any contention that Section 13(a) was issued for such purpose. Rather his position is that the section merely provides a ceiling price for those who do not file.

In Vitamins, Inc., v. Bowles, Em.App., 149 F.2d 497; Great Northern Co-op. Ass'n v. Bowles, Em.App., 146 F.2d 269 and Shaker Parkway Co. et al. v. Porter, Em.App., 157 F.2d 920, the Administrator had found that the industries under consideration were engaging in evasive practices. Upon that finding, we approved the regulations as necessary to prevent circumvention.

In these and other cases in which the court has had before it the question of whether a regulation was necessary in order to prevent circumvention or evasion the Administrator had in fact found that the questioned regulation was necessary for that purpose. Here the Administrator made no such finding. The court has no right to go beyond the record and decide the issue upon what the Administrator might have held necessary to prevent evasion after considering evidence, if that subject matter had been considered and determined upon pertinent evidence.

We believe that regulations promulgated under Section 2(g) must comply with the rules applicable to all regulations. That section does not repeal the requirements that regulations must be generally fair and equitable and shall not be arbitrary or capricious. In other words a regulation expressly found by the Administrator to be necessary to prevent circumvention is not valid if it is not fair and equitable or if it is arbitrary or capricious. We think that Congress did not intend by Section 2

(g) to authorize a price regulation which did not meet the requirements laid down in other sections of the Act.

If we approve the regulation we reach this untenable result: If a regulation provides a simple means for individual adjustment, it need not be generally fair and equitable to the industry if it is fair and equitable to the "low margin fringe of the industry"; nor need it effectuate the purposes of the Act. Here complainants failed to file a pricing chart. Because of this failure, under this regulation, they are subjected to the penalties provided by the Act, and to damages for sales above a ceiling which standing alone is arbitrary and not generally fair and equitable. While it is possible to escape future liability by filing, once a sale has been made without a chart, there is nothing to save complainants from the additional liability for damages for over-ceiling sales determined by an arbitrary discriminatory regulation.

Respondent in effect informs complainants that, "there is nothing you can do to prevent recovery of damages based upon a mark-up which represents the historical mark-up enjoyed only by the low margin fringe of the industry"; he advises them further, "you can not object to that ceiling because at one time you could have obtained relief, or, by filing now, you can obtain relief in the future." Upon these facts, we can not escape the conclusion that respondent overstepped his authority to fix ceiling prices and in effect subjected complainants to a penalty, not authorized by the Act, by so much as the maximum prices computed by Section 13(a) are below a ceiling which is generally fair and equitable. To do this, is to remove the regulation from a price fixing category in which respondent places it and in which, as we have said, we prefer to place it.

If we accept respondent's statement in oral argument that he divided manufacturers of these garments into two classes, two segments of the industry,— those who file charts and those who do not, —then we come face to face with improper classification, made not on the basis of reason or facts but upon a wholly artificial

distinction resulting in discrimination. Pfeiffer Brewing Co. v. Bowles, Em.App., 146 F.2d 1006. If, of two manufacturers with equal costs, one files a chart and one does not, one receives the benefit of a fair yardstick, the other that of one wholly arbitrary. As we said in Hawaii Brewing Corporation v. Bowles, Em.App., 148 F.2d 846: "Surely prices may vary on the same commodity in various localities throughout the United States and its possessions. Flett v. Bowles, Em.App., 142 F.2d 559, 564. But this does not mean that different pricing standards may be applied to members of the same industry in the same locality without a showing of facts justifying the differentiation. It is essential to fair treatment that all persons who are similarly situated be dealt with upon the same basis; that no greater burdens be laid upon one than are laid upon others in the same calling and condition. Consolidated Water Power & Paper Co. v. Bowles, Em.App., 1944, 146 F.2d 492; Pfeiffer Brewing Co. v. Bowles, Em.App., 1945, 146 F.2d 1006. We applied this test in Consolidated Water Power & Paper Co. v. Bowles, supra, and Flett v. Bowles, supra, finding price regulations invalid because they subjected the complainants to competitive handicaps not characteristic of the industry prior to price control. We see no reason for deviating from that reasoning." As we said in Gibbs v. Defense Supplies Corporation, Em.App., 155 F.2d 525, at page 531: "If a price regulation prescribed a maximum price for a commodity as applicable generally to a particular class of sellers, and then without any rational basis of differentiation prescribed a lower maximum price as applicable to an individual member or small group of that class, the latter provision would constitute an arbitrary and capricious discrimination. * * * Whether such discrimination is brought about in the price regulation itself or in an interrelated subsidy regulation, in either case this court has jurisdiction to set aside the discriminatory provision as being arbitrary and capricious."

Judgment will enter setting aside Section 13(a) of the regulation.

MARIS, Chief Judge (dissenting).

I find myself unable to agree to the conclusion to which my brethren have come in this case. For it seems to me that Section 13(a) of Revised Maximum Price Regulation No. 287 must be viewed in the light of the whole regulation of which it is an integral part and particularly of Section 6 which authorizes and requires each manufacturer to prepare and file his own spring pricing chart.

Section 13(a) limits manufacturers' margins to 15% until they shall have filed and received an acknowledgment of the required pricing chart. The evidence shows that historically 15% was the smallest margin realized by any appreciable portion of the industry manufacturing women's, girls', children's and toddlers' outerwear garments. Considered in vacuo, therefore, I can understand why Section 13(a) might be regarded as arbitrary.

Considered in its relation to Section 6, however, as I think it must be, it seems to me to be entirely reasonable and, indeed, the only feasible solution of the problem confronting the Administrator. For the scheme of the regulation is to permit and, indeed, require those subject to it to fix their own prices based on their own historical margins through the procedure of preparing and filing pricing charts. Here, therefore, is a regulation which, while it does fix the maximum price at the minimum historically enjoyed by the low margin fringe of the industry, nevertheless at the same time gives to each member of the industry the opportunity himself to adjust this maximum price upward by preparing and filing a pricing chart. In other words, the regulation fixes the allowable margin at the minimum enjoyed by any appreciable portion of the industry while at the same time permitting any manufacturer whose historical margin was higher to self-adjust his ceiling price so as to enable him to realize that margin.

It is not contended that the provisions of Section 6 for the filing of pricing charts are invalid. On the contrary I think it is clear that those provisions are quite rea-

₃onable and useful in the fair administration and enforcement of the regulation. But if we grant the propriety of requiring the filing of pricing charts it seems to me necessarily to follow that the fixing for those who do not choose to file such charts of a maximum margin at the lowest level known in the industry is not only reasonable but the only course which would not tend to defeat the fundamental plan of the regulation to require the members of the industry to file and post publicly their pricing charts. For if a substantial segment of the industry could obtain higher margins by refraining from filing pricing charts the regulation would be providing a powerful inducement for the evasion of its own provisions. I cannot hold that the Administrator acted arbitrarily in meeting this problem as he did.

I am authorized to say that Judge MAGRUDER joins in this dissent.