215 F.2d 653
 Gilbert C. KERSHAW, William N. Stobo, George E. Phelps, Frank L. Laffee, Emmons K. Berry, Paul W. Swift, George W. Thompson, Bonnie W. Bacon, David B. Barker, Eugene L. Lounsbury, Stanley J. Kowalczyk, Albert G. Kenney and Nildo B. Sartori
v.
Charles H. KENDALL, Assistant Director, Office of Defense Mobilization.
Hubert B. KLOSTERMAN, Roy S. MacDougal, Leslie R. Ladd, Floyd H. Bennett, John Marshak, Everett H. Pert, and A. Clayton Longfellow
v.
Charles H. KENDALL, Assistant Director, Office of Defense Mobilization.
 No. 623.
 No. 624.
 United States Emergency Court of Appeals
 Heard at Boston May 18, 1954.
 Decided September 24, 1954.
 
 Sumner H. Babcock, Boston, Mass., with whom Bingham, Dana & Gould, Boston, Mass., were on the brief, for complainants in No. 623.
 Roger P. Stokey, Boston, Mass., with whom Frank B. Wallis and Goodwin, Proctor & Hoar, Boston, Mass., were on the brief, for complainants in No. 624.
 John G. Roberts, Atty., Dept. of Justice, Washington, D. C., with whom Warren E. Burger, Asst. Atty. Gen., Edward H. Hickey, Chief, General Litigation Section, and George Arthur Fruit, Atty., Dept. of Justice, and James A. Durham, Stabilization Counsel, Office of Defense Mobilization, Washington, D. C., were on the brief, for respondent.
 Before MARIS, Chief Judge, and MAGRUDER and McALLISTER, Judges.
 MARIS, Chief Judge.
 
 
 1
 The complainants, all of whom were employed as managers or salesmen by Swift & Company in the sale of meat, are defendants in a criminal information pending in the United States District Court for the District of Massachusetts, which charges them, together with Swift & Company, with having violated the Defense Production Act of 1950, 50 U.S.C. A.Appendix, § 2061 et seq., between May 25 and August 9, 1951 by selling fabricated beef cuts to retailers in violation of section 8(b) (3) of Ceiling Price Regulation 24 and by invoicing said beef falsely in violation of section 8(b) (1) of that regulation. Asserting as a defense that the provisions of the regulation are invalid the complainants obtained leave from the District Court under section 408(d) of the Defense Production Act to file in this court the complaints now before us which seek a declaratory judgment that these regulatory provisions are invalid. Since the complaints raise identical questions they have been consolidated.
 
 
 2
 The complainants' attack in this court is centered upon section 8(b) (3) of Ceiling Price Regulation 24.[1] CPR 24 imposed ceiling prices on beef sold at wholesale. Section 8(b) (3) provided:
 
 
 3
 "Sec. 8. Evasion. * * *
 
 
 4
 "(b) Among others, the following practices are considered evasions and are prohibited:
 
 
 5
 * * * * * *
 
 
 6
 "(3) Selling or invoicing fabricated beef cuts to buyers other than purveyors of meals, hotel supply houses, combinations distributors or ship suppliers."
 
 
 7
 In order to understand the contentions of the parties it must be remembered that CPR 24 described the 16 primal cuts of a beef carcass which might be sold at wholesale, which it defined as wholesale cuts, and prohibited the sale at wholesale, except at the low prices fixed for flanks, of any other cuts, with certain exceptions not material here and with the further exception of fabricated beef cuts which the regulation permitted to be sold to purveyors of meals, hotel supply houses, combination distributors and ship suppliers only. The regulation described in detail the 37 cuts to be derived from the primal cuts which it defined as fabricated beef cuts and which it permitted to be sold at wholesale to the limited group of buyers just mentioned.
 
 
 8
 It is the primary contention of the complainants, and the only one which we find it necessary to consider, that for many years prior to May 9, 1951, the effective date of CPR 24, it was an established business practice and method of distribution in the wholesale beef industry in New England and throughout the United States for sellers of beef at wholesale to sell the fabricated beef cuts defined in CPR 24 to retailers generally, in addition to the limited group, purveyors of meals, hotel supply houses, combination distributors and ship suppliers, to which their sale was restricted by the regulations. Pointing to section 402(g) of the Defense Production Act which prohibits the use of the powers granted by title IV of the Act to compel changes in the business practices, cost practices or methods or means or aids to distribution, established in any industry, except upon an affirmative finding that such action is necessary to prevent circumvention or evasion of a regulation, the complainants assert that the Director of Price Stabilization made no such finding in connection with his issuance of CPR 24. Accordingly, they argue, the prohibition of the sale of fabricated beef cuts to others than those specified in section 8(b) (3) was beyond the power of the Director and, therefore, invalid. The respondent opposes both contentions. He asserts that the Director did make the finding required by section 402(g) of the Act to enable him to compel a change in the business practice of selling fabricated beef cuts to retailers generally and that, in fact, there was no such established business practice in the industry as the complainants state existed.
 
 
 9
 The first question, therefore, is whether there existed in the wholesale beef industry prior to the issuance of CPR 24 a business practice to sell cuts of beef corresponding to the fabricated cuts described in the regulation to retailers generally and not merely to the limited group mentioned in section 8(b) (3). Evidence as to the existence of such a business practice was taken before the respondent, pursuant to order of this court, and is now before us together with the respondent's opinion with respect thereto to the effect that the complainants have failed to prove the existence of such a practice.
 
 
 10
 We cannot agree with the respondent's view of the evidence. On the contrary, upon the independent consideration of the evidence which is required of us in a case brought under section 408(d) of the Act,[2] we find as a fact that it was the established business practice and a method of distribution in the wholesale meat industry prior to May 9, 1951, except during the period of price control under the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix, § 901 et seq., to sell fabricated beef cuts of the kinds described in CPR 24 to retailers generally, both those with and those without cutting facilities, as well as to purveyors of meals, hotel supply houses, combination distributors and ship suppliers. We further find that this practice, while more extensive in New England, existed to a substantial extent throughout the United States.
 
 
 11
 The overwhelming weight of the evidence compels these findings. The complainants offered in evidence the affidavits of a great number of retailers and wholesalers throughout the country as well as officers of Swift & Company and other national packers. In defense the respondent offered only the affidavit of the former chief of the Beef and Small Stock Section of the Office of Price Stabilization, which affidavit consisted largely of hearsay and argumentative statements. This deponent's argument, adopted by the respondent, was that in the pre-price control period the sale of fabricated cuts to retailers other than those mentioned in section 8(b) (3) was limited to those small retailers who did not have cutting facilities of their own,[3] and that the complainants' evidence is not to the contrary. The affidavits offered by the complainants are not so limited, however, but taken as a whole fully established that, except during the period of price control, the sale of fabricated cuts took place to retailers generally, not merely to the group mentioned in section 8(b) (3) and the small stores without cutting facilities, and that it was sufficiently widespread through the country as to be definitely an industry-wide practice.
 
 
 12
 We come, then, to the remaining question, whether the Director of Price Stabilization made the affirmative finding required by section 402(g)[4] of the Defense Production Act that it was necessary to compel this change in the existing business practice in order to prevent circumvention or evasion of the regulation. Such an express affirmative finding was a prerequisite to the validity of section 8(b) (3).[5] This question is quickly answered. Neither in the regulation itself nor in the accompanying statement of considerations does any such affirmative finding appear. We quite agree with the respondent that this necessary finding need not be in the precise language of section 402(g). But it must be an express affirmative finding conforming in substance to the requirements of that section. No such finding may be found. The respondent points to the Director's finding in his statement of considerations that "the provisions of this regulation are generally fair and equitable and are necessary to effectuate the purposes of Title IV of the Defense Production Act of 1950". This, however, is not the finding required by section 402(g). When the Director desired to make such a finding he knew how to do so, as is evidenced by the findings appearing in his statement of considerations accompanying Amendment 3 to CPR 24. It seems much more logical to assume that since the Director did not think that such a business practice existed he did not believe it necessary to make the finding when issuing CPR 24.
 
 
 13
 We conclude that section 8(b) (3) of CPR 24 was in conflict with section 402(g) of the Defense Production Act and was invalid from its inception. A judgment so declaring will be entered.
 
 
 
 Notes:
 
 
 [1]
 Issued April 30, 1951, effective May 9, 1951, 16 F.R. 3721
 
 
 [2]
 In such a case, just as in a case brought under section 204(e) of the Emergency Price Control Act, the respondent in taking evidence acts merely as an examiner without any duty or power to make findings of fact. Lee v. Fleming, Em.App. 1946, 158 F.2d 984
 
 
 [3]
 The respondent contends, in this connection, that Amendment 2 to CPR 24, effective May 12, 1951, 16 F.R. 4442, permitted the sale of prefabricated retail cuts, i. e. beef steaks, roasts and ground beef separately wrapped in transparent moisture proof paper and marked with name, grade and weight, to many small retail establishments which did not have their own cutting facilities and that these prefabricated cuts corresponded to some of the fabricated cuts in question. In view of our finding that the practice of selling fabricated cuts extended to retailers having their own cutting facilities this contention is without present significance. Equally without significance here is the respondent's reference to the fact that CPR 24 permitted the sale of certain boneless beef cuts, some of which corresponded to certain fabricated cuts, since such cuts were limited to utility, cutter or canner grades of beef, while the fabricated cuts customarily sold in prior years were not so limited
 
 
 [4]
 "(g) The powers granted in this title shall not be used or made to operate to compel changes in the business practices, cost practices or methods, or means or aids to distribution, established in any industry, except where such action is affirmatively found by the President to be necessary to prevent circumvention or evasion of any regulation, order, or requirement under this title."
 
 
 [5]
 Supak v. Porter, Em.App.1946, 158 F. 2d 803